IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL ACTION No.: 5:12CV45-RLV

| | |
|---|---|
| HELLBENDER, INC., d/b/a Boone Saloon, a North Carolina Corporation, and PHOENIX COMPANY, INC., d/b/a Char, a North Carolina Corporation,<br>      Plaintiffs-Petitioners,<br><br>vs.<br><br>TOWN OF BOONE,<br>      Defendant-Respondent. | )<br>)<br>)<br>)    Memorandum and Order<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**THIS MATTER** is before the Court upon Plaintiffs' "Combined Motion for Temporary Restraining Order and Preliminary Injunction," originally filed June 15, 2012, and resubmitted July 23, 2012 along with a Memorandum in Support.[1] (Docs. 16, 17). Defendant filed its Response and accompanying Memorandum in Opposition on August 6, 2012. (Docs. 18, 19). After obtaining an extension of time, Plaintiffs' Reply was filed August 23, 2012. (Doc. 23).

Defendant Town of Boone has also moved for dismissal of all claims brought by Plaintiffs pursuant to FED. R. CIV. P. 12(b)(6).[2] (Docs. 7, 8, 14).

---

[1] Plaintiffs' original motion was dismissed as failing to comply with Local Civil Rule 7.1(C).

[2] The Court's initial review of Plaintiffs' claims revealed that the potential imposition of civil penalties against Plaintiffs in the event of a noise ordinance violation did not amount to an irreparable harm. Because it was obvious that Plaintiffs could not make a clear showing as to the likelihood of irreparable harm absent preliminary injunctive relief, prudence required the undersigned to address the dispositive Rule 12 motion first. *See Winter v. Nat'l Ress. Def. Council, Inc.*, 129 S.Ct. 365, 376 (2008), *vacated by* 103 S.Ct. 2371 (April 26, 2010), *reinstated in relevant part by* 607 F.3d 355 (4th Cir. June 8, 2010) (The party seeking the preliminary injunction must demonstrate by "a clear showing" that, among other things, it is likely to succeed on the merits at trial.)

## I. Nature of Case

This civil case commenced on March 22, 2012 upon Plaintiffs' filing of a document entitled, "Petition for Writ of Certiorari" in the Watauga County Superior Court, North Carolina, pursuant to N.C. Gen. Stat. § 1-266 and Chapter 93: Noise Control of the Ordinance of the Town of Boone ("Ordinance"). (Doc. 1 / Exh. A).

The Plaintiff group consists of corporate entities, Hellbender, Inc., d/b/a Boone Saloon ("Hellbender") and Phoenix Company, Inc., d/b/a Char ("Phoenix"), both organized and found in North Carolina. (Am. Petition, ¶¶ 1, 2) Both Plaintiff entities offer food and beverages as well as a "venue[] for playing live and recorded music." (Am. Petition, ¶ 3). Both Plaintiffs rent the premises where their respective businesses are located, although from different property owners. (Am. Petition, ¶ 3). Plaintiffs' establishments are located within Boone's corporate limits, specifically within Boone's B-1 Zoning District. (Am. Petition, ¶ 4; Answer, ¶ 5).

The original Defendants were identified as the Town of Boone and the Boone Town Council. (Doc. 1 / Exh. 1, Petition, at 1). At present, the Town of Boone ("Boone") is the only named defendant.[3]

The impetus for Plaintiffs' Amended Petition is Boone's adoption of various amendments to the Ordinance that affect businesses within the B-1 Zoning District. (Am. Petition, ¶¶ 3,4). Reportedly, Boone has had a noise ordinance in place since 1999.[4]

---

[3] The Amended Petition dropped the Boone Town Council from the caption. Accordingly, Boone Town Council was terminated as a party by the Clerk on July 10, 2012. Boone represents in its Answer to Amended Petition that it consents to the dismissal of the Boone Town Council despite the fact that Plaintiffs did not comply with Rule 41(a) of the Federal Rules of Civil Procedure. (Doc. 4 / Answer at 1, First Affirmative Defense). Boone preserves its claim for attorney's fees related to its response concerning allegations against Boone Town Council. (Id.)

[4] The Court does not rely on the Affidavits presented by Boone in opposition to Plaintiffs' request for injunctive relief to decide the Rule 12(b)(6) Motion. (Brown Aff., ¶ 3; Houck Aff., ¶ 2)

According to Plaintiffs, in or around the summer of 2010, Boone considered proposed amendments to its existing ordinance and conducted meetings through February 2012 to consider proposed amendments to "Chaper 93: Noise Control." (Am. Petition, ¶¶ 5, 6). Boone asserts that it voted to adopt amendments to Chapter 93 at the February 21, 2012 regular meeting of the Boone Town Council, and that the effective date for the amendments was March 1, 2012. (Answer, ¶ 6).

As amended, Section 93.05 of the Ordinance speaks directly to "Limits on live, recorded or amplified music originating from commercial establishments and live music venues in the Town's B-1, B-2, B-3, and U-1 zoning districts." (Ordinance § 93.05). Section 93.05 imposes restrictions on the level of sound, measured by decibel levels, deemed acceptable depending on the day of the week and time of day.[5] The Ordinance requires written notice for the first four violations of § 93.05. (Ordinance § 93.05, ¶ (G)). The Ordinance imposes civil fines as penalties for the fifth ordinance violation incurred thereafter in any rolling twelve month period, with assessments starting at $100 per violation, up to a $500 assessment during the twelve month period. (Ordinance § 93.05, ¶ (G)). The Ordinance is enforceable upon the Town's receipt of a complaint and law enforcement's separate and "reasonable" determination that, in light of the circumstances, the Ordinance was violated. (Ordinance § 93.01, ¶ (B)(2) and § 93.05, ¶ (E)). After the Ordinance was amended, Boone determined there would be a "trial period" from the effective date of March 1, 2012 through June 30, 2012. (Answer at 2, Fifth Affirmative Defense). During the trial period, Boone was to document complaints received, as well as the results of law enforcement's investigation of complaints, but would not issue fines or penalties. (Id.)

---

[5] Only the provisions of the Ordinance considered relevant to the Plaintiffs' legal challenges are discussed within this Memorandum and Order.

The parties disagree as to the proper characterization of the instant action, which was originally brought in state court. Although not explained on its face, Plaintiffs' case-opening document captioned "Petition for Writ of Certiorari" appears to have been an attempt to appeal a "quasi-judicial" decision of a decision-making board (i.e., Boone Town Council) to the North Carolina Superior Court. *See* N.C. Gen. Stat. § 160A-393 (2010) (prescribing mechanism for appeal in the nature of certiorari for zoning matters such as application of a local ordinance). Boone asserts that its authority to regulate via its Town Council is purely legislative – not quasi-judicial. *See In the Matter of Markham*, 131 S.E.2d 329 (N.C. 1963) (writ of certiorari is not applicable to legislative process). If Plaintiffs' filing is construed *solely* as a "Petition for Writ of Certiorari," the proper forum for the dispute is the North Carolina Superior Court as opposed to this federal district court.[6]

In addition to petitioning for certiorari, Plaintiffs' filing cites as authority, N.C. Gen. Stat. § 1-266, which provides that the North Carolina Declaratory Judgment Act "shall be so interpreted and construed as to effectuate its general purpose to make uniform the law of those states which enact it, and to harmonize, as far as possible, with federal laws and regulations on the subject of declaratory judgments and decrees." N.C. Gen. Stat. § 1-266 (2013). Plaintiffs do not expressly assert a cause of action under the North Carolina Declaratory Judgment Act itself, codified at N.C. Gen. Stat. § 1-253.[7]   (Am. Petition, at 1; Answer, Second Affirmative

---

[6] The title or label of Plaintiffs' filing is not determinative in any event. Although Plaintiffs are represented by counsel and not entitled to liberal construction, this Court looks rather to the nature of the relief sought in evaluating the pending motions.

[7] N.C. Gen. Stat. § 1-253. Courts of record permitted to enter declaratory judgments of rights, status and other legal relations.

> Courts of record within their respective jurisdictions shall have power to declare rights, status, and other legal relations, whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment

Defense).

Plaintiffs' initial filing also purports to assert a cause of action against Boone for allegedly violating Plaintiffs' constitutional right to free speech provided by the First Amendment of the U.S. Constitution.

On April 20, 2012, Boone timely removed the case to this federal district court. (Doc. 1 / Notice of Removal).[8] Because Plaintiffs' initial pleading (or "well-pleaded complaint") asserted a First Amendment violation, the presence of a federal question provided the basis for subject matter jurisdiction, 28 U.S.C. § 1331. *See Louisville & Nashville R.R. Co. v. Mottley*, 211 U.S. 149, 152 (1908) (establishing basis for the well-pleaded complaint rule; claim "arises under" federal law under 28 U.S.C. § 1331 "only when the plaintiff's statement of his own cause of action shows that it is based upon those laws or th[e] [U.S.] Constitution . . . .").

On May 14, 2012, Plaintiffs amended their Petition ("Amended Petition") as a matter of right before any responsive pleading, FED. R. CIV. P. 15(a)(1) (2009). (Doc. 3). The Amended Petition added substantive claims alleging violation of Plaintiffs' substantive due process rights and equal protection of the law guaranteed by the Fourteenth Amendment of the U.S. Constitution. (Am. Petition, ¶ 21)

On May 26, 2012, Defendant Boone filed its Answer to the Amended Petition. (Doc. 4). Boone's Answer asserted a host of affirmative defenses, including failure to state a claim pursuant to Rule 12(b)(6), governmental immunity, legislative immunity, that the action is not ripe for judicial review, lack of standing. (Answer / Second, Third, Fourth, Fifth, and Sixth

---

or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.

[8] Plaintiffs commenced litigation on March 22, 2012. Boone was served on March 23, 2012. The Notice of Removal was filed less than thirty (30) days later on April 20, 2012. (Doc. 1 / Notice of Removal at 1, ¶¶ a and b).

Affirmative Defenses). Boone also requested the imposition of sanctions against Plaintiffs pursuant to Rule 11 of the Federal Rules of Civil Procedure, but never supplied a Memorandum of Law in Support of its request.[9]

On June 17, 2012, by filing its separate Motion and Memorandum of Law in Support of its Rule 12(b)(6) Second Affirmative Defense, Boone formally moved to dismiss Plaintiffs' Amended Petition for failure to state a claim upon which relief may be granted under FED. R. CIV. P. 12(b)(6). (Docs. 7, 8, 14) Plaintiffs oppose Defendant's motion. (Doc. 12)

## II. Rule 12(b)(6) Standard

"To survive a Rule 12(b)(6) motion to dismiss, a complaint must establish "facial plausibility" by pleading "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."" *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir.2013) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "At bottom, a plaintiff must 'nudge [ ] [its] claims across the line from conceivable to plausible' to resist dismissal." *Clatterbuck*, 708 F.3d at 554 (quoting *Wag More Dogs*, 680 F.3d at 365 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)).

As a general rule, the Court "may not consider documents outside of the complaint, or not expressly incorporated therein, on a motion to dismiss." *Clatterbuck*, 708 F.3d at 557 (citing *Braun v. Maynard*, 652 F.3d 557, 559 n. 1 (4th Cir.2011); FED.R.CIV. P. 12(d)).[10] However, a

---

[9] Boone's Rule 11 motion is based on Plaintiffs' alleged filing 1) having "no evidentiary support," 2) being based upon factual misrepresentations that would have been discovered upon any reasonable inquiry, and 3) asserting non-existent legal bases as claims against Boone. (Answer, ¶¶ 1-21, 22-25).

[10] Rule 12(d) provides:

If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are

narrow exception exists under Rule 12(d) that "allows a court to consider facts and documents subject to judicial notice without converting the motion into one for summary judgment." *Id.* (citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 466 (4th Cir.2011)).

The Court first considers the merits of Boone's Rule 12(b)(6) Motion.

### III. Discussion

**A. Standing**

Boone claims in its Answer that Plaintiffs lack standing because they fail to allege that either Plaintiff has suffered any injury. (Answer at 3, Sixth Affirmative Defense). According to Boone, no injury could be had during the Ordinance's "trial period," which expired June 30, 2012.[11] (Answer at 3, Sixth Affirmative Defense).

It is undisputed that Plaintiffs' businesses are located within the corporate limits of the Town of Boone and specifically within the B-1 Zoning District. Therefore, Plaintiffs are, in fact, subject to the enforcement of § 93.05 of the Ordinance. Plaintiffs allege that the ordinance levels were chosen "to silence the ability of bar and restaurant owners within the Town of Boone to play live and recorded music during their peak hours." (Am. Petition, ¶ 8). Therefore, at this stage of the proceedings, Plaintiffs allege sufficient facts in support of constitutional standing. *See Clatterbuck,* 708 F.3d at 553 (reversing and remanding to district court, holding that plaintiffs had standing to challenge ordinance on First Amendment grounds; noting that in a Rule 12(b)(6) posture, before any discovery has been done, "general factual allegations of injury

---

presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion.

[11] Boone also asserts that Plaintiffs "present only indoor music, the levels of which are uncontrolled by the ordinance." (Answer at 3, Sixth Affirmative Defense). However, the Ordinance controls noise generally in addition to the specific venues identified within § 93.05.

resulting from the [City's] conduct may suffice . . . ."); *Brown,* 706 F.3d at 300 (standing existed to challenge constitutionality of sign regulation as well as exemptions to regulation not applicable to plaintiff).

    **B. First Amendment**

"Before determining the sufficiency of [Plaintiffs'] allegations, [the Court] must first ascertain the appropriate First Amendment framework to apply to their claim." *Clatterbuck*, 708 F.3d at 554.

Plaintiffs' allegations involve a form of protected speech and regulation of that speech within a public forum. "Music, as a form of expression and communication, is protected under the First Amendment." *Ward v. Rock Against Racism*, 491 U.S. 781, 790 (1989). In addition, "places such as parks, streets, and sidewalks fall into the category of public property traditionally held open to the public for expressive activity." *See Brown v. Town of Cary*, 706 F.3d 294, 300 (4th Cir.2013) (Downtown Mall area deemed a traditional public forum) (internal citations omitted). Since the challenged Ordinance applies to particular zoning areas within Boone, including the downtown area where Plaintiffs' businesses are located, the Ordinance is intended to apply in a traditional public forum.

It is well established that "even in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental interest, and that they leave open ample alternative channels for communication of the information." *Ward*, 491 U.S. at 791 (internal citations and quotation marks omitted) (upholding municipal noise regulation as "content-neutral" time, place or manner regulation under First Amendment).

Because the level of scrutiny to be applied depends upon whether the restriction is content based or content neutral, content neutrality is the first issue presented. *See Brown*, 706 F.3d at 300 (quoting *City of Ladue v. Gilleo*, 512 U.S. 43, 50-51 (1994)). In undertaking this task, the undersigned notes that "the chief purpose of content neutrality is to prevent a government from supervising the marketplace of ideas . . . [by] choos[ing] which issues are worth discussing or debating . . . ." *Brown*, 706 F.3d at 301 (quoting *Consol. Edison Co. v. Pub. Serv. Comm'n*, 447 U.S. 530, 537-38 (1980) (internal quotation marks omitted).

"The principal inquiry in determining content neutrality . . . is whether the government has adopted a regulation of speech because of disagreement with the message it conveys." *Ward*, 491 U.S. at 791 (citing *Clark v. Comty. for Creative Non-Violence*, 468 U.S. 288, 295 (1984)). In explaining how to evaluate a regulation, the Supreme Court stated:

> "The government's purpose is the controlling consideration. A regulation that serves purposes unrelated to the content of expression is deemed neutral, even if it has an incidental effect on some speakers or messages but not others. Government regulation of expressive activity is content neutral so long as it is "*justified* without reference to the content of the regulated speech."

*Ward*, 491 U.S. at 791-92 (internal citations omitted); *Wag More Dogs, LLC v. Cozart*, 680 F.3d 359, 368 (4th Cir. 2012) (quoting *Ward*, 491 U.S. at 791). In *Wag More Dogs,* the Fourth Circuit imparted the following three-part test:

> [A] regulation is not a content-based regulation of speech if (1) the regulation is not a regulation of speech, but rather a regulation of the places where some speech may occur; (2) the regulation was not adopted because of disagreement with the message the speech conveys; or (3) the government's interests in the regulation are unrelated to the content of the affected speech.

*Wag More Dogs, LLC*, 680 F.3d at 366 (quoting *Covenant Media of S.C., LLC v. City of N. Charleston*, 493 F.3d 421, 433 (4th Cir.2007)). More recently, the Fourth Circuit distilled this three-part test into a "succinct formulation of content neutrality," namely, a regulation is content

neutral if "justified without reference to the content of regulated speech." *Brown*, 706 F.3d at 303 (quoting *Hill v. Colorado*, 530 U.S. 703, 720 (2000)).

As an initial matter, the Court appropriately looks to the terms of the Ordinance itself in evaluating content neutrality. *See e.g., Satellite Broad. and Commc'ns Assoc. v. FCC*, 275 F.3d 337, 353-54 (4th Cir.2001) ("First, we must examine the plain terms of the regulation to see whether, on its face, the regulation confers benefits or imposes burdens based upon the content of the speech it regulates.") Plaintiffs attach the Ordinance to its Amended Petition as "Exhibit A" and incorporate it by reference. (Am. Petition, ¶ 13 / Doc. 4-1).

Here, the Ordinance is content neutral because it can be justified without reference to content. On its face, the Ordinance as a whole seeks to regulate and control noise during certain times of the day. The Ordinance prescribes restrictions (decibel levels) in accordance with "normal expectations for sound during normal waking hours versus the normal expectations for sound during normal sleeping hours." (Ordinance § 93.01, ¶ (B)(1)) (addressing how reasonableness is to be evaluated for purposes of enforcement).

Plaintiffs' primary support for its content based restriction argument are the exceptions made within § 93.02 of the Ordinance for sporting events associated with or sponsored by Watauga High School or Appalachian State University, § 93.02, D(3), and for "sounds emanating from a non-recurring community event conducted by a governmental entity, school, church, or seminal non-commercial entity," Section 93.02, D(2). (Am. Petition, ¶¶ 10, 11). However, each of these exclusions are qualified by time period consistent with Boone's stated policy. In order to qualify, the non-recurring community event with which the noise is associated must begin no earlier than 6:00 a.m. and end no later than 10:00 p.m., and occur no more than four times any calendar year. (Ordinance § 93.02, ¶ D(2)). For sporting events, the

event must be scheduled to end by 11:00 p.m., and "any crowd associated with the event is expected to disburse[sic] by 11:30 p.m." (Ordinance § 93.02, ¶ D(3)). Moreover, the event's exempt status is expressly conditioned upon continued compliance with the Ordinance terms. (Ordinance § 93.02, ¶¶ D(2) and (3)). The "peaceful community" theme is constant throughout the Ordinance. These exclusions fail to support any inference that the Ordinance was enacted to restrict the content of speech.

The undersigned further rejects the argument that because Section 93.05 of the Ordinance is devoted to "live, recorded or amplified music originating from commercial establishments and live music venues" in certain zoning districts it must be content based. "A statute's differentiation between types of speech does not inexorably portend its classification as a content-based restriction." *Wag More Dogs,* 680 F.3d at 366-67. The Fourth Circuit has held that it is permissible for an ordinance to apply differently based upon location. *See e.g., Covenant Media of S.C., LLC,* 493 F.3d at 433-34, n. 9 (sign ordinance deemed content neutral even though location of sign triggered different regulation for different type of sign; signs not distinguished by the messages conveyed); *compare e.g., Metromedia, Inc. v. City of San Diego*, 453 U.S. 490, 512-13 (holding unconstitutional a city ordinance that generally banned signs containing non-commercial advertising).

Plaintiffs also claim that a higher decibel level "during warm weather months" gives rise to an inference that Boone seeks to restrict content.[12] (Am. Petition, ¶ 9). There is a related

---

[12] Regardless, Boone points out that the Ordinance does *not* provide for different decibel levels for different seasons of the year. (Doc. 8 / Def.'s Mem. In Supp., 8; Ordinance § 93.05, Table 1). The only reference to weather conditions involves how law enforcement is to attempt to measure the noise complained of. For example, "whether a sound is "audible within a person's temporary or usual place of abode" shall be determined with one or more windows of the complaining party open, assuming weather conditions during which it is reasonable and customary for one or more windows to be open." (Ordinance § 93.01, ¶ (B)(4)).

allegation that Plaintiffs did not receive the same consideration in voicing opposition to the Ordinance as patrons for another venue for outdoor music, a town-operated community center called the "Jones House." (Am. Petition, ¶ 9). It only stands to reason that if venues for live or recorded music, including Boone Saloon and Char, are capable of hosting outdoor events during the warm weather months, then a higher decibel level would benefit all of the venues equally.

Because the Court finds that Boone's purpose in amending its noise ordinance is content neutral, intermediate scrutiny is applied. *See Wag More Dogs,* 680 F.3d at 365 n. 3 (motion to dismiss; First Amendment challenge to sign ordinance); *Brown*, 706 F.3d at 301, 305 (analyzing content neutrality of sign ordinance in summary judgment context). Accordingly, the Court considers whether Boone's noise ordinance, as amended: 1) furthers a substantial government interest; 2) is narrowly tailored to further the government interest; and 3) leaves open ample alternative channels of communication.

- **The Ordinance Furthers A Substantial Government Interest**

The Ordinance challenged here falls squarely within the municipality's police powers. Under North Carolina law, "A city may by ordinance regulate, restrict, or prohibit the production or emission of noises or amplified speech, music, or other sounds that tend to annoy, disturb, or frighten its citizens." N.C. GEN. STAT. § 160A-184 (1973); s*ee e.g., Brown*, 706 F.3d at 301 (comparing the government's ability to regulate the physical characteristics of signs with the regulation of audible expression in its capacity as noise and upholding sign ordinance as constitutional). Indeed, the Ordinance's "Statement of Policy" reads:

> It is the policy of the Town of Boone to maintain a peaceful community at all times, while recognizing that certain noises are generated by the expected and acceptable economic and recreational activity of a vibrant community. The goal of the Town is to encourage such activity while ensuring that time periods during which many of the residents are customarily at rest or have an expectation of peaceful enjoyment of their residences are not disturbed by unacceptable levels of

> noise. It shall be unlawful for any person, firm, corporation or other entity to make, allow, or cause to be made any excessive, unreasonable or unusually loud noise, as described herein, or to cause any noise for the primary purpose of annoying or disturbing another person.

(Ordinance § 93.01, ¶ (A)). The Supreme Court recognized in *Ward* that a "city's desire to control noise levels . . . in order to retain the character [of a particular area] and its more sedate activities, and to avoid undue intrusion into residential areas . . . " was a legitimate justification or government interest." *Ward*, 491 U.S. at 792, 796. The Boone Ordinance is likewise supported by a legitimate government interest.

- **The Ordinance Is Narrowly Tailored To Further The Government Interest**

In considering whether the Ordinance is narrowly tailored, the Court must be satisfied that the Ordinance does not "burden substantially more speech than is necessary to further the government's legitimate interests." *Brown*, 706 F.3d at 305 (quoting *Ward*, 491 U.S. at 799.) The narrowly tailored principle does not require a time, place, or manner regulation be the "least restrictive or least intrusive means" of regulation but is satisfied "so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation." *Ward*, 491 U.S. at 798-99 (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)). In other words, whether a regulation is narrowly tailored should not turn on whether the court agrees or disagrees that the decisionmaker chose *the most appropriate method* for furthering the government's interest. *Id*.

Chapter 93 imposes limits on the *level of noise* throughout the Town of Boone and its corporate limits. Section 93.05, the provision of the Ordinance targeted by Plaintiffs, sets forth specific and objective limitations on noise levels within specific zoning districts. The Ordinance sets forth the applicable decibel limits in hourly increments. (Ordinance § 93.05, Table 1). The decibel limits are then adjusted to correspond to the exact time of day, with a higher level of

sound being permitted during the day and a lower level of sound being acceptable during the night. (Ordinance § 93.01, ¶ (B)(1)). The decibel limits also vary depending on whether a complaint is made within a business or university setting versus a residential area, with a higher level of sound being permitted within a business setting versus a lower level of sound governing residential areas. (Ordinance § 93.01, ¶ (B)(1)). The Ordinance further provides for more lenient restrictions in the form of higher decibel levels being permitted on Friday and Saturday nights and generally higher decibel levels throughout the weekend. (Ordinance § 93.05, Table 1). Because the Ordinance is not "substantially broader than necessary" to achieve Boone's government interest, the Boone Ordinance is narrowly tailored.

- **The Ordinance Leaves Open Ample Alternative Channels Of Communication**

The third inquiry is whether the Ordinance leaves open ample alternative channels of communication. Under the Ordinance terms, Plaintiffs are not prohibited altogether from providing live music at their establishments. Rather, Plaintiffs must entertain customers *within Ordinance limits*. Because Plaintiffs are not limited as to the type of entertainment they may offer, or the manner in which it is offered, this third criteria is easily satisfied. *See Ward*, 491 U.S. at 802 (alternative channels of communication requirement "easily met" where regulation did "not attempt to ban any particular manner or type of expression at a given place or time" and had "no effect on the quantity or content of expression" other than to regulate the extent of amplication).

In conclusion, the Court finds that the Ordinance is a constitutional, content neutral time, place and manner regulation of speech. Plaintiffs' First Amendment claim must be dismissed.

### C. Equal Protection / Substantive Due Process

In a single paragraph, Plaintiffs assert that Boone's Ordinance is "in violation of the Petitioners' substantive due process rights and rights under the Equal Protection Clause of the Constitution of the United States of America and as applied to the State of North Carolina through the Fourteenth Amendment . . . ." (Am. Petition, ¶ 21). Plaintiffs' equal protection claim appears to be premised on the argument that the Ordinance was adopted with the sole purpose of targeting Plaintiffs' businesses, which are not within any protected class. (Am. Petition, ¶ 8). A liberal read of Plaintiffs' filings reveals that Plaintiffs' substantive due process claim might be based upon the argument that the Ordinance effectively deprives Plaintiffs of the "use of their property." (Am. Petition, ¶¶ 15,17). There are no other factual allegations made that could be construed as support for a substantive due process claim.

Plaintiffs fail to provide legal authority in support of these claims. Moreover, Plaintiffs fail to articulate any legal argument whatsoever attempting to distinguish the Boone Ordinance from the noise ordinances upheld by other courts despite similar constitutional challenges. In fact, Plaintiffs appear to base these claims on the possibility that *some law* has been violated amidst the process of amending the Ordinance.[13] Plaintiffs' speculative claims hardly satisfy the "plausibility requirement" set forth within *Twombly*.

For these reasons, Plaintiffs' equal protection and substantive due process claims will be dismissed as well.

---

[13] Within the Prayer for Relief, Plaintiffs request that Defendant Boone be "ordered to file a complete record of the proceedings in this matter, including a written transcript of the Town Council's hearings in order that the Court may determine if the Town acted in accordance with law . . . ." (Am. Petition, Prayer for Relief, ¶ 2). According to Boone, Plaintiffs' officers, who were present at many of the meetings described within the pleadings, requested and were provided access to duplicate recordings of all meetings pertaining to the Ordinance amendments. (Doc. 4 / Answer, Motion for Sanctions at 8-9, ¶¶ 22-24). Boone further represents that Plaintiffs never paid for the recordings or minutes and never picked them up after they were made available. (Id.)

### D. Estoppel / Laches

Plaintiffs also argue that Boone should be estopped from enforcing the amended Ordinance solely because Plaintiffs' respective businesses have been in operation and not subject to any noise control regulation or citizen complaints for up to eight years.[14] (Am. Petition, ¶ 15) Plaintiffs provide no legal authority in support of this argument. This claim is also without merit.

### IV. Order

For all of these reasons, Plaintiffs' Writ of Certiorari / Complaint fails to state a claim upon which relief may be granted.

**IT IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss is **GRANTED**. (Doc. 7).

**IT IS FURTHER ORDERED** that Plaintiffs' "Combined Motion for Temporary Restraining Order and Preliminary Injunction" is **DENIED as MOOT**. (Doc. 16).

Signed: March 31, 2013

Richard L. Voorhees
United States District Judge

---

[14] Plaintiff Boone Saloon has operated in the same location for approximately eight years and Plaintiff Char has been in its current location for approximately four years. (Am. Petition, ¶ 3).